Mr. Justice Olin
delivered the opinion of the court:
This case comes before us on a bill of exceptions taken on the trial of the cause. The facts embodied in the bill of exceptions, briefly stated, are these:
*64 The Government of the United States issued a draft, No. 9243, on war-warrant No. 915, in the following form:
$3,414.] Treasury oe the United States,
Washington, March 9,1867.
Pay to the order of Mrs. E. Y. Kimbro three thousand four hundred and fourteen dollars.
[No. 9213.] Registered March 9,1867. Issued on requisition No. —.
$3,414.] S. B. COLBY,

Register of the Treasury.

F. E. SPINNER,

Treasurer of the United States.

To the First National Bank

of Washington, I). G.'

This draft, purporting on its face to have been indorsed by Mrs. Kimbro, after passing through several banks, reached the First National Bank of Washington, where it was paid, and on settlement between the bank and the United States the draft was delivered up and canceled.
It was claimed on the trial of the cause that Mrs. Kimbro never, in fact, indorsed the draft; that her signature as indorser appearing thereon was a forgery; and therefore the action was brought against the defendant to recover the proceeds of the draft.
There were several counts in the complaint, one of which was substantially a count in trover for the draft. It used in substance, if not in express terms, the words prescribed by the rules of this court for a complaint in an action of trover, and with this count in trover were also joined the several common counts in assumpsit.
On the trial of the cause, the justice presiding, instead of non-suiting the plaintiff for a misjoinder of causes of action, allowed the plaintiff to amend her pleadings in the case by electing whether she would proceed with the trial in trover or assumpsit. The plaintiff elected to proceed in assumpsit upon the count familiarly known as the count for money had and received. Upon this theory the case was tried. On the trial numerous exceptions to the rulings of the justice were taken, *65 to most of which, we deem it unnecessary to advert, because upon the admitted facts of the case we think this action cannot be maintained.
The case presents this question, viz: Whether by the rules of the common law, or by the law of this District, existing prior to the 29 th of July, 1869, a married woman to whom a draft, promissory note, or promise made for a valuable consideration, can maintain an action thereon during coverture, in her own name.
As the justice presiding at the trial of the cause held that the wife might maintain the action, it - becomes necessary to examine this question.
In the third exception taken, it is recited that the plaintiff was then produced as a witness, and swore that she resided near Nashville, Tenn.; that she was the party named in said draft as the payee, and in answer to the defendant’s questions she said that she was a married woman, living with her husband, and that she had never been divorced. In answer to the plaintiff’s counsel, she said that she had transacted all her husband’s business for the last seven or eight years on account of his mental imbecility. The defendant’s counsel then asked her if her husband was not the owner of the property that had been taken by the United States, for which taking a claim had been allowed, and whether the draft in question had not been given in payment therefor. To this question the counsel for the plaintiff objected, and the court sustained the objection, and the defendant thereupon excepted to the ruling of the court. This ruling can only be material in reference to one aspect of the case, which will be hereafter considered.
At common law a married woman could not maintain an action in her own name for any cause that accrued to her before coverture. During coverture she could not maintain an action in her own name for any conceivable interest or right accruing to her during coverture, and for the reason that, according to the rules of the common law, if she failed in her action, nobody could be made liable for the costs of the suit. Thus, when she had a cause of-action in her own right, her husband was required to be joined with her in the suit, that *66 in the event of its miscarriage he might be made responsible for the costs.
At common law, where a promissory note is made to a femme sole, and she afterwards marries, being possessed of the note, the title vests in her husband, and he alone can indorse it. (See Connor vs. Martin, 1 Strange, 516; Segg vs. Segg, 9 Mass. R., 99.) And so where a note is made payable to a married woman, the legal interest in it vests in the husband. (See Barlow vs. Bishop, 1 East., 432.) Such negotiable note being part of her personal estate, payable to her order, is in legal effect payable to her husband. (See 10 Mod. R., 245; 4 Tenn. R., 361; 2 Bur., 1776; Edwards on Bills and Promissory notes, 72.) Chitty on Pleading, 33, tells us what the consequence is of a mistake in parties plaintiff to a suit in the case of baron and femme. ETe states that when a married woman might be joined with her husband, but sues alone, the objection can only be pleaded in abatement, and not in bar, though her husband might sustain a writ of error, and if she marry after writ and before plea, her coverture must be pleaded in abatement, and cannot be given in evidence under the general issue. But where the wife improperly sues alone, having no legal right of action, she will be non-suited; and if she improperly joins in an action with her husband, who ought to sue alone, the defendant may demur, or the judgment will be arrested or reversed on writ of error. And if the husband sue alone when the wife ought to be joined, either in her own right or in autre droit, he will be non-suited; or if the objection appear on the record, it will be fatal in arrest of judgment or upon error. Numerous adjudicated cases are cited by Chitty in support of the rules above mentioned, which need not be here quoted.
Upon the theory of the common law a femme covert could not maintain a suit for any cause in her own name, and in no case can she sue alone. The reason of the rule, as before observed, is that such femme covert could in no way be made responsible for the consequences of a judgment against her. No execution can issue against her, for, according to the common law, she was a nonentity, her legal existence being merged in that of the husband. No court of equity, so far as I know, has ever made the costs of a suit at law by the *67 wife a charge upon her separate estate, if she chanced to have any.
In the case of Griswold vs. Pennington, 2 Conn. R., 565, the rights of husband and wife, as between themselves and in respect to third parties, are clearly stated by Chief-Justice Swift. He says the husband by marriage acquires a right to the use of the real estate of the wife during her life; and if they have a child born alive, then, if he survive, during his life as tenant by courtesy. He acquires an absolute right to her chattels real, and may dispose of them. If he does not dispose of them, and survive his wife, they survive to him, but if she outlives her husband they survive to her. He acquires an absolute property in her chattels personal in possession ; but as to her choses in action, he may maintain a suit jointly with her to recover them, and if he reduces them to possession during coverture, they become his; otherwise, they survive to the wife if she outlives him, or to her administrator if she does not. As to the property of the wife accruing during coverture, the same rule is applicable, except in regard to choses in action. These vest absolutely in the husband, on the principle that the husband and wife are but one in law, and her existence in legal consideration is merged in his. He may in such cases bring a suit in his own name without joining his wife. This clearly proves that choses in action vest in him absolutely, for if the right was in the wife she must necessarily join in the suit. Where a bond or note is given to the wife, the husband cannot maintain an action in his own name. The consequence, then, is that if the husband die before the wife, such choses in action shall go to his executor or administrator, and they do not survive to the wife, for where the property has been absolutely vested there can be no survivorship. (See Cord on the Legal and Equitable Rights of Married Women, S. 1008; Barlow vs. Bishop, 1 East., 432.) This latter case is so much in point, it may be well to quote the substance of it. It was an action by the indorsee of a promissory note against the maker, which note was drawn payable to one Anne Parry or order, two months after date, for forty-one pounds and ten shillings, and by her indorsed to the plaintiff, (Barlow.) The first count in the declaration was upon the note, to which were added the money *68 counts. Tt appearing in evidence before Lord Kenyon, at the trial at the Middlesex sittings, that Anne Párry was a married woman carrying on trade at Birmingham in her own name, with the consent of her husband, and that the plaintiff, who lived in London, had furnished her with goods to the amount of the note, dealing’ with her as a femme sole ; that the plaintiff, after much delay, having pressed for payment, the defendant, with a view to serve Mrs. Parry, gave her the note in question, with the knowledge of her being a married woman, and with a view that she should pay it over to the plaintiff, in order to stop his proceedings against her, which she did by indorsing it over to him. A verdict was taken for the plaintiff, with leave to the defendant to move the court to enter a non-suit if it should be of opinion that the plaintiff could not recover upon any of the counts in the declaration. A rule was accordingly entered, and the question presented in the case was argued by Gibbs for the defendant, and by Erskine and Espinasse for the plaintiff.
I will quote the points made by Erskine and Espinasse to sustain the verdict in the case, because they seem to present in the most ingenious and plausible manner all that could be said in favor of sustaining the Arerdict.
The argument was that although by delivery of the note to the wife for her use, the property vested in the husband 5 they contended, first, that, as she carried on trade in her own name, with her husband’s consent, all acts done by her in the course of such trade must be taken to be with the knowledge and consent of her husband, and he having permitted her to indorse the note in question, it in effect became his own indorsement. But, secondly, if the property in the note could not pass by her indorsement, though made with her husband’s consent, then, as the defendant knew that she was a married woman, and that the object of making the note payable to her was that she might indorse it to the plaintiff, Avhich bylaw was a nullity, it is the same in legal effect as if the note were made payable to a fictitious person, in which case it becomes payable to bearer, as in Gibson vs. Minet, 3 Tenn. R., 481, or as if it were made payable to the plaintiff himself, for whose use it was expressly given. Perhaps, too, under the special circumstances of the case, the giving this note may *69 be considered as evidence under the money counts of the defendant’s having received so much money for the use of the plaintiff in payment of his demand upon Anne Parry; or, as in Fenner vs. Mears, 2 Blackstone, 1269, it amounts to an agreement by the defendant to hold so much money for the use of the person to whom Anne Parry herself should indorse the note.
To this reasoning Lord Kenyon, C. J., says: “I saved the point at the trial, not from any doubt entertained by myself at the time, but to give an opportunity to the plaintiff’s counsel to see if there was any ground upon which the action could be sustained, but none has been or can be stated. It is clear that the delivery, of the note to the wife vested the interest in the husband, and as he permitted her to carry on trade on her own account, and this was a transaction in the course of that trade, I am not prepared to say that that would not have availed, as many acts of this nature may be done by a power of attorney, and the jury might have presumed what was necessary in favor of an authority from her husband for this purpose. But the indorsement being in her own name, it is quite impossible to say that she could pass away the interest of her husband by it. And this is not like a note payable to the order of a fictitious person, to whom no interest can pass, but here the interest passed to the husband. The rule for a nonsuit was made absolute.”
By this decision, and numerous others which might be quoted, it appears that Mrs. Kimbro, fey the rules of the common law, could not maintain an action in her own name upon the draft nor upon the common counts in assumpsit.
1 infer from the ruling of the Chief-Justice, who presided at the trial, that he was of the opinion that the act of Congress regulating the rights of married women in this District so changed the rules of the common law as to enable Mrs. Kimbro to maintain this action in her own name. This act is as follows:
AN ACT regulating the rights of married women in the District of Columbia.
“ Sec. 1. Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, *70 That in the District of Columbia the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were femme sole, and shall not be subject to the disposal of her husband, nor be liable for his debts; but such married woman may convey, devise, and bequeath the same, or any interest therein, in the same manner and with like effect as if she were unmarried.
“ Sec. 2. And be it further enacted, That any married woman may contract, and sue and be sued, in her own name, in all matters relating to her sole and separate property in the same manner as if she were unmarried ; but neither her husband nor his property shall be bound by any such contract nor liable for any recovery against her in any such suit, but judgment may be enforced by execution against her sole and separate estate in the same way as if she were sole.
“Approved April 10, 1869.”
It will be remembered that the draft was delivered to Mrs. Kimbro on or about the 9th of March, 1867; that the act of Congress in reference to the rights of married women was passed April 10,1869. It is apparent, therefore, that this act has no relevancy to the question, unless we give it a retroactive effect. Such aconstruction of a statute will always be avoided if the language of it will render it possible, and for the obvious reason that such a construction would not unfrequently divest vested rights. It would, in effect, transfer rights from one person to another by simple legislative enactment. It has been uniformly held by courts in the construction of statutes that they should have no retroactive effect, unless such intention was clearly and explicitly declared in the language of the statute.
By an act of the legislature of the State of New York, passed in 1848, in reference to the rights of married women, an attempt was apparently made to vest in the wife the sole and exclusive property, of all choses in action, belonging to her before marriage, and not reduced to possession by the husband at the time of the passage of the act. The court of appeals of the State of New York decided with unanimity *71 that the act should not be construed to affect vested rights, and that if it was intended to do so it was unconstitutional and void.
It appears from this case that prior to the act of 1848, in reference to the rights of married women, a legacy had been left to the wife, but before the legacy had been reduced to possession by collection the act of 1848 was passed, and the husband having the right to reduce the legacy to possession, the legislature had no'power to divest him of that right, and that the law was void as to all personal property that married women had or were entitled to at the time of the passage of the act: for by the marital contract made between the husband and wife the husband was then the owner of all the wife’s personal estate, and entitled to reduce the same to possession. (See Westervell vs. Gregg, 2 Kernan, 202.)
In the case last referred to there seems to have been an attempt on the part of the legislature to vest the interest of a husband arising out of the marital contract in the wife 5 this the court say eannot be done. If, therefore, we were disposed to give the act of 10th April, 1869, a retroactive operation which no language of the act warrants, it would violate the principle of law laid down in 2d Kernan, before quoted. But the language of the act is. free from all obscurity on this point. It provides “ that the right of any married woman to any property, personal or real, belonging to her at the time of her marriage, or acquired during marriage, in any other way than by gift or conveyance from her husband, shall be as absolute as though she were a femme sole,” &c.
It appears by the third exception taken at the trial that the counsel for the defendant asked the plaintiff, Mrs. Kimbro, who took the stand as a witness in her own behalf, whether her husband was not “ the owner of the property that had been taken by the United States, for which taking said claim had been allowed, and was not the draft in question given in payment therefor V’ This question was objected to, and the objection' was sustained by the court, and an exception to the ruling taken.
It is difficult to understand upon what theory of law this question was overruled. If the act of Congress could be construed to have a retroactive effect, it could in no way benefit *72 the plaintiff’s case, for the draft was given in payment for the husband’s property, and was in no sense the separate estate of Mrs. Kimbro, unless the payment of an honest debt by the United States must be regarded in law as a gift or donation.
Under the instructions of the presiding justice, the jury rendered a verdict for the plaintiff.
The judgment in the case must be reversed.